UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 139; INTERNATIONAL
UNION OF OPERATING ENGINEERS
LOCAL 420,

    Plaintiffs,

v.                        Case No. _____

BRAD SCHIMEL, in his official capacity as
Attorney General for the State of Wisconsin;
JAMES R. SCOTT, in his official capacity as
Chairman of the Wisconsin Employment Relations
Commission,

    Defendants.

---

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

**INTRODUCTION**

1. This action is brought under 42 U.S.C. § 1983, 29 U.S.C. § 158(a)(3), and Article III, § 2 of the United States Constitution to challenge Wisconsin Statutes § 111.04(3)(a)(3) because it is preempted by the National Labor Relations Act ("NLRA") and violates the Fifth Amendment of the United States Constitution.

2. Wisconsin Statutes § 111.04(3)(a)(3) is part of Wisconsin's so-called right to work law (2015 Wisconsin Act 1). The NLRA allows states to pass laws prohibiting "agreements requiring membership in a labor organization as a condition of employment." 29 U.S.C. § 164(b). But Wisconsin's right to work law goes beyond prohibiting agreements that require membership in a labor organization or its functional equivalent. The Wisconsin statute also

prohibits agreements requiring bargaining unit employees to "[p]ay *any* dues, fees, assessments, or other charges or expenses of any kind or amount, or provide anything of value, to a labor organization." Wis. Stats. § 111.04(3)(a)(3) (emphasis added).

3. Wisconsin Statutes § 111.04(3)(a)(3) is preempted by the NLRA insofar as it prohibits employers and labor unions from agreeing that all bargaining unit workers, regardless of union membership status, must pay a service fee for union representation expenses.

4. To the extent that Wisconsin Statutes § 111.04(3)(a)(3) prohibits a union from obtaining reimbursement for the cost of collective bargaining representation that the union is obligated to provide to non-members by federal law, the state provision also effects an unconstitutional taking in violation of the Fifth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of State law, of rights secured by the Constitution and laws of the United States.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants reside in this District.

## PARTIES

7. Plaintiff International Union of Operating Engineers Local 139 ("Local 139") is a labor organization representing approximately nine thousand working men and women in Wisconsin. Local 139 maintains offices in Madison, Altoona, Pewaukee, and Appleton, Wisconsin.

8. Plaintiff International Union of Operating Engineers Local 420 ("Local 420") is a labor organization representing more than two thousand working men and women in Wisconsin. Local 420 maintains offices in Green Bay and Oak Creek, Wisconsin.

9. Defendant Brad Schimel is sued in his official capacity as Attorney General for the State of Wisconsin. Defendant Schimel has responsibility for enforcing Wisconsin's criminal laws and assisting local prosecutors.

10. Defendant James R. Scott is sued in his official capacity as the chair of the Wisconsin Employment Relations Commission, which is responsible for enforcing and resolving disputes arising under Wisconsin Statutes § 111 *et seq.*, including Wisconsin's right to work law.

## LEGAL BACKGROUND

### A. The NLRA

11. The NLRA provides for a democratic system of exclusive representation collective bargaining. If a majority of the employees in a bargaining unit choose a particular union to represent them, that union is designated as "the exclusive representative[] of all the employees in [the] unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a).

12. The NLRA imposes on the "exclusive representative" a legal duty to represent all workers in the bargaining unit, not just those who choose to be union members. For example, in the context of collective bargaining, the union cannot negotiate a wage increase for its members in exchange for accepting no increase for non-members in the bargaining unit. The terms and conditions of the collective bargaining agreement apply equally to all members of the bargaining unit without regard to membership in the union. Similarly, the union must make available on equal terms to non-members any grievance and arbitration procedure. Engaging in collective bargaining and processing employee grievances require a union to expend significant financial resources.

13. The NLRA permits a union and an employer to enter into an agreement that requires, as a condition of employment, that all employees in the bargaining unit, regardless of membership status, pay a service fee to cover the union's representational expenses.

3

14. The NLRA prohibits states from passing laws that conflict with the NLRA or that regulate any activity that the NLRA arguably protects or prohibits, as well as any conduct that Congress intended to leave unregulated to allow for the free play of economic forces.

15. Section 14(b) of the Labor Management Relations Act permits states to prohibit "agreements requiring membership in a labor organization as a condition of employment." 29 U.S.C. § 164(b).

### B. Wisconsin's Right to Work Law

16. Wisconsin's law prohibits more than just "agreements requiring membership in a labor organization," covered by section 14(b). Wisconsin Statutes § 111.04(3)(a)(3) provides that "[n]o person may require, as a condition of obtaining or continuing employment, an individual to . . . [p]ay any dues, fees, assessments, or other charges or expenses of any kind or amount, or provide anything of value, to a labor organization." Wisconsin's law purports to prohibit even a voluntary agreement between an employer and a labor union that would require all employees to pay a service fee for the cost of the union's collective bargaining representation, or even some subset of those costs, including the cost of processing individual grievances.

17. Wisconsin's law further provides that "[i]f a provision of a contract violates this subsection, that provision is void." Wis. Stats. § 111.04(3)(b).

18. Violations of Wisconsin Statutes § 111.04(3)(a) are punishable as criminal misdemeanors, *see* Wis. Stats. § 947.20, and as unfair labor practices, *see* Wis. Stats. § 111.06(a).

## FACTUAL ALLEGATIONS

### A. Plaintiffs' Work Representing Bargaining Unit Members

19. Plaintiffs Local 139 and Local 420 (collectively, "the Unions") represent over eleven thousand operating engineers in Wisconsin. The operating engineers represented by Local 139 build and maintain Wisconsin's major industrial and infrastructure systems, including its tunnels, bridges, ports, airports, pipelines, power plants, paper mills, and other manufacturing facilities.

4

Local 420-represented engineers operate and maintain the physical plant systems in buildings throughout Wisconsin such as hotels, schools, hospitals, commercial buildings, and industrial complexes.

20. Local 139 has been representing workers in Wisconsin since 1902. Local 420 was formed in 2012 by the merger of three local unions, which together had represented Wisconsin workers for a combined 200 years.

21. Each of the Unions spends significant financial and human resources representing every employee in the bargaining units for which it has been elected "exclusive representative," Union members and non-members alike.

22. Collective bargaining involves a significant expenditure of the Unions' resources. For example, Local 139 renegotiates each of its six master collective bargaining agreements every three years. In addition, Local 139 has approximately one hundred independent collective bargaining agreements with employers throughout Wisconsin, which are also subject to renegotiation every couple of years. Negotiations for each agreement typically involves several months of labor-management meetings, for which the Union's bargaining team of Union officers and staff prepares extensively. During negotiations, Local 139 obtains the input of its outside counsel, having them review draft proposals and conduct legal research.

23. Local 420 has sixteen collective bargaining agreements, each of which must be negotiated approximately every three years. Local 420 devotes extensive time and resources to collective bargaining. Local 420 provides multi-day trainings for its bargaining teams with presentations from lawyers and expert negotiators on critical bargaining skills. Local 420 sends out surveys to each member of the bargaining unit to solicit feedback on what changes employees would like to see in the upcoming contract. Local 420 compiles and reviews the survey results and uses them in developing its bargaining positions. Bargaining itself often involves day-long meetings, three days per week, for several months.

24. The wage increases, health and retirement benefits, and other job protections negotiated by the Unions apply equally to all bargaining unit employees, regardless of whether they choose to be Union members.

25. Both Unions spend the bulk of their financial and human resources on contract administration, which includes ensuring that the collective bargaining agreements are properly implemented, investigating employee complaints, and processing grievances.

26. Local 139 employs a staff of thirty-three business agents, whose primary job duty is contract administration. Those thirty-three business agents drive Union-supplied cars all over the state, visiting job sites, conducting safety inspections, discussing employee concerns, and meeting with management to resolve disputes. Each business agent drives, on average, 60,000 miles per year for official business due to the remote locations of many job sites.

27. Local 420 employs a staff of three business agents, who are responsible for negotiating with management over workplace disputes, answering employee questions, conducting workplace visits, and supervising a team of approximately sixty shop stewards.

28. The Unions' business agents are also involved in grievances the Unions file on behalf of employees for discipline, discharge, or other violations of their collective bargaining agreements. The business agents spend many hours per week processing grievances by interviewing witnesses, drafting employee statements, and negotiating with management.

29. If a business agent is unable to resolve a grievance, it may be referred to binding arbitration paid for by the respective Union for which outside counsel may be retained. Arbitration costs are significant. In addition to the cost of attorneys, expert witnesses, and compensating other witnesses for lost wages, independent arbitrators in Wisconsin routinely charge $4,500 - $10,000 for a labor arbitration.

30. In accordance with the federal duty of fair representation, the Unions' contract administration and grievance handling services are available equally to all members of the bargaining unit, regardless of Union membership.

31. Although the work of the Unions benefits all bargaining unit employees, under Wisconsin's law only those employees who choose to be Union members may be required to pay for the benefits they receive. Any employee who declines Union membership is given a state-sanctioned right to receive all these services for free.

32. Prior to the enactment of Wisconsin's right to work law, each of the Unions had, in each of its collective bargaining agreements, a union security clause that required all bargaining-unit employees to pay their fair share for the Union's representation.

### B. Service Fee Proposal

33. In May 2016, Local 139 proposed to several Wisconsin employers to enter into an agreement requiring, as a condition of employment, all employees in the bargaining unit to pay a service fee to the Union to contribute to the cost of the Union's representation. Eight employers signed the agreement with Local 139. *See* Exhibits A-H attached hereto. Two employers, one of which employs over 1,500 workers represented by Local 139, rejected Local 139's proposal, stating that they could not enter into a Fair Representation Fee Agreement because of Wisconsin's right to work law.

34. Under the proposed Fair Representation Fee Agreements, service fees would be used by the respective Union solely to pay for costs related to negotiating and administering the collective bargaining agreement, including investigating and processing grievances. *See* Exhibit A at ¶ 4.

35. At the end of each calendar year, the Union would provide to all bargaining unit employees an accounting of how the service fees were spent. *See id.* at ¶ 5. The Union would also provide annual notice to all bargaining unit members, as well as individual notice to all new hires, regarding the calculation of the fair representation fee and the employee's right to challenge the calculation of that fee, including the right to an appeal before an impartial arbitrator paid for by the Union. *See id.* at ¶ 6.

36. With respect to the eight employers who signed the proposed Fair Representation Fee Agreements, Wisconsin Statutes § 111.04(3)(a)(3) deprives Local 139 of the opportunity to
7

enforce the agreements. Because they conflict with Wisconsin's right to work law, Wisconsin Statutes § 111.04(3)(b) renders the proposed Fair Representation Fee Agreements "void." Accordingly, the Fair Representation Fee Agreements may be enforced only if Local 139 obtains a final judgment from a court of competent jurisdiction no longer subject to appeal or review that Wisconsin's law cannot be applied to preclude their enforcement. *See* Exhibit A at ¶ 1.

37. Wisconsin Statutes § 111.04(3)(a)(3) also deprived Local 139 of the opportunity to bargain over the Fair Representation Fee Agreement with the two employers who rejected Local 139's proposal, thereby not only eliminating Local 139's ability to enter into such an agreement, but also reducing its ability to bargain with those employers in other respects.

38. Local 139 represents the employees of over 2,600 Wisconsin employers in addition to the employers to whom it has already proposed entering into a Fair Representation Fee Agreement. Local 139 would like the opportunity to negotiate a Fair Representation Fee Agreement similar to the ones attached as Exhibits A-H with each of the employers in Wisconsin with whom it has a collective bargaining agreement.

39. Local 420 represents the employees of sixteen Wisconsin employers. Local 420 would like the opportunity to negotiate a Fair Representation Fee Agreement similar to Local 139's agreements with each of the employers in Wisconsin with whom it has a collective bargaining agreement.

40. Wisconsin Statutes § 111.04(3)(a)(3) deprives the Unions of the opportunity to bargain over a Fair Representation Fee Agreement with Wisconsin employers, thereby not only eliminating the Unions' ability to enter into or enforce such an agreement, but also reducing their ability to bargain with such employers in other respects.

41. If this Court enjoins Defendants from enforcing Wisconsin Statutes § 111.04(3)(a)(3), the Unions intend to seek to enter Fair Representation Fee Agreements with every Wisconsin employer whose employees the Unions represent.

8

42. On information and belief, if not for Wisconsin Statutes § 111.04(3)(a)(3), each of the Unions could successfully negotiate Fair Representation Fee Agreements with Wisconsin employers.

43. Wisconsin Statutes § 111.04(3)(a)(3) has caused and continues to cause irreparable injury to the Unions.

## COUNT I

### Preemption by National Labor Relations Act

44. Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

45. Wisconsin Statutes § 111.04(3)(a)(3)'s prohibition on voluntary agreements requiring an employee, as a condition of employment, to "[p]ay any dues, fees, assessments, or other charges or expenses of any kind or amount, or provide anything of value, to a labor organization" is preempted by the NLRA and violates 42 U.S.C. § 1983 insofar as it would prohibit each of the Unions and a Wisconsin employer from entering into an agreement requiring bargaining unit employees to pay a service fee of any kind, including one solely to cover the cost of the Unions' collective bargaining representation.

46. As applied to unions covered by the NLRA, Wisconsin Statutes § 111.04(3)(a)(3) is preempted and violates 42 U.S.C. § 1983 because it attempts to regulate concerted activities that are arguably or actually protected or prohibited by the NLRA.

47. As applied to unions covered by the NLRA, Wisconsin Statutes § 111.04(3)(a)(3) is preempted and violates 42 U.S.C. § 1983 because it interferes with the free play of economic forces in collective bargaining over a mandatory bargaining subject, and because it attempts to regulate a subject of collective bargaining that Congress intended to leave for the parties to negotiate, free of state regulation.

9

## COUNT II

### Violation of the Fifth Amendment: Unconstitutional Taking

48. Plaintiffs reallege and incorporate herein by reference each and every allegation and paragraph set forth previously.

49. The Takings Clause of the Fifth Amendment of the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment does not, however, allow the government to take the property of one private party for the sole purpose of transferring it to another private party. Such a taking for private use is presumptively unconstitutional.

50. As applied to unions covered by the NLRA, Wisconsin Statutes § 111.04(3)(a)(3) effects an unconstitutional taking and violates 42 U.S.C. § 1983 insofar as it prohibits the unions from collecting any payment for services that federal law requires the unions to render to non-members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for the following relief:

1. An injunction enjoining Defendants, their agents, employees, assigns, and all persons acting in concert or participation with them from enforcing Wisconsin Statutes § 111.04(3)(a)(3) to the extent that it prohibits an employer and a union covered by the NLRA from agreeing that all bargaining unit employees, regardless of union membership status, must pay a service fee for union representation expenses.

2. A declaration that Wisconsin Statutes § 111.04(3)(a)(3) is preempted as applied to unions, employers, and employees regulated by the NLRA, and violates 42 U.S.C. § 1983;

3. A declaration that Wisconsin Statutes § 111.04(3)(a)(3) is unlawful and invalid as applied to unions, employers, and employees regulated by the NLRA because it effects an unconstitutional taking in violation of the Fifth Amendment and 42 U.S.C. § 1983;

4. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

5. Such other and further relief as the Court deems just and proper.

Dated: May 19, 2016

Respectfully submitted,

By: */s/ Stephen P. Berzon*

STEPHEN P. BERZON (CA Bar No. 46540)
SCOTT A. KRONLAND (CA Bar No. 171693)
ZOE PALITZ (CA Bar No. 275752)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California  94108
Telephone:     (415) 421-7151
Facsimile:     (415) 362-8064
Email: sberzon@altber.com
Email: skronland@altber.com
Email: zpalitz@altber.com

BENJAMIN I. SACHS (DC Bar No. 479092)
1525 Massachusetts Avenue
Cambridge, MA 02138
Telephone:     (617) 384-5984
Facsimile:     (617) 496-5156 (fax)
Email: bsachs84@gmail.com

*Attorneys for Plaintiffs*

By: */s/ Mark A. Sweet*

MARK A. SWEET (WI Bar No. 1024320)
JOHN M. LOOMIS (WI Bar No. 1014890)
Sweet and Associates, LLC
2510 East Capitol Drive
Milwaukee, Wisconsin 53211
Telephone:     (414) 332-2255
Facsimile:     (414) 332-2275
Email: msweet@unionyeslaw.com
Email: jloomis@unionyeslaw.com

*Attorneys for IUOE Local 420*

By: */s/ Brian C. Hlavin*

BRIAN C. HLAVIN (WI Bar No. 1044654)
Baum Sigman Auerbach & Neuman, Ltd.
c/o IUOE Local 139
N27 W23233 Roundy Drive
P.O. Box 130
Pewaukee, Wisconsin 53072
Telephone:     (312) 236-4316
Facsimile:     (312) 236-0241
Email: bhlavin@baumsigman.com

*Attorney for IUOE Local 139*